UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JAMES LA VELL HARRIS,<br><br>    Plaintiff,<br><br>v.<br><br>LAKE COUNTY, *et al.*,<br><br>    Defendants. | Case No.: 1:11-cv-06209-NJV<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 47)** |

## INTRODUCTION

Plaintiff James La Vell Harris filed this *pro se* civil rights action in federal court in 2011. The original complaint alleged that Lake County officials violated federal and California laws when they refused to give Harris medical marijuana to treat his severe back pain during a four-day incarceration in 2011, refused to give him a wheelchair, and refused to issue him a "no-standing" chrono that would excuse him from standing for the daily head counts. After two motions to dismiss, the sole claim remaining is an Eighth Amendment deliberate indifference claim against defendant K.C. Grigsby based on the denial of a wheelchair and a no-standing chrono. Now before the court is Grigsby's motion for summary judgment on that claim. After full briefing, the matter was heard on January 15, 2013. For the reasons discussed below, the court will grant Grigsby's motion for summary judgment.

## BACKGROUND

The court dismissed the original complaint for failure to state a claim, with leave to amend. Doc. No. 28. Harris filed an amended complaint. Doc. No. 30. The court dismissed the amended complaint against several of the defendants, with prejudice, and dismissed certain claims against remaining defendant Grigsby, with leave to amend. Doc. No. 37. The court

explained that Harris could file a second amended complaint against Grigsby, and that if Harris chose not do so, the action would proceed solely as an Eighth Amendment claim against Grigsby based on the denial of a wheelchair and a no-standing chrono. Doc. No. 37 at 10. Harris "accept[ed] the court's ruling" on the motion to dismiss and chose to proceed against Grigsby solely on the Eighth Amendment claim. Doc. No. 40 at 1. The factual and procedural background of this action is fully addressed in the court's prior orders (Doc. Nos. 28 & 37) and is incorporated by reference here.

## JURISDICTION AND VENUE

This court has original federal question jurisdiction over actions brought under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331. All parties have consented to the jurisdiction of this court pursuant to 28 U.S.C. § 636(c). *See* Doc. Nos. 5, 17 & 40. Venue is proper in this district because the events or omissions giving rise to the claims occurred in Lake County, which is located in the Northern District of California. *See* 28 U.S.C. §§ 84, 1391(b).

## LEGAL STANDARD ON SUMMARY JUDGMENT

A court "shall" grant summary judgment when the pleadings, discovery, and evidence show that there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the outcome of the action, and a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact exists. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations and citations omitted); *see also* Fed. R. Civ. P. 56(c)(1). Courts considering summary judgment motions are required to view the evidence in the

light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Courts, however, need not "scour the record in search of a genuine issue of triable fact," and must "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also* Fed. R. Civ. P. 56(c)(3). If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate. *Liberty Lobby*, 477 U.S. at 248.

## DISCUSSION

### A.     Undisputed Material Facts

In support of her motion, Grigsby submitted the declaration of a medical expert, Dr. John Levin, and that of the custodian of records for Lake County Jail, Alisha Stottsberry. She also submitted discovery responses from Harris. Harris opposed the motion for summary judgment and filed a request for judicial notice of medical records, correspondence with Lake County Jail, and grievance forms. *See* Doc. No. 70. These documents are not the type of adjudicative facts that are judicially noticeable, and the court thus denies Harris' request. *See* Fed. R. Evid. 201. However, these documents may properly be attached to a declaration and submitted as evidence in opposition to the motion for summary judgment. At the January 15, 2013 hearing, the court asked Harris to authenticate the documents orally. Harris authenticated them, thereby making them part of the record on this motion. In addition, because the Amended Complaint is verified (Doc. No. 30 at 8), the court will consider any specific facts alleged in the complaint that are admissible in evidence when evaluating the propriety of summary judgment in this case. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn. 10-11 (9th Cir. 1995) (verified complaint may be used to oppose summary judgment, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence).

Based on this evidence, the following facts appear to be undisputed:

Harris complains of chronic back pain, which he contends is caused by "degenerative dis[c] disease." Doc. No. 30 at ¶¶ 5, 10, 19; *see also* Doc. No. 68. To establish that he suffers pain due to degenerative disc disease, Harris provided an MRI report dated February 8, 1999.

Doc. No. 70, Ex. A (the "1999 MRI Report"). The 1999 MRI Report states that Harris was seen for "[s]evere back pain [and evaluated] for disc or degenerative disease." *Id*. After reviewing the findings of the MRI, the radiologist opined that there was "extremely minor disc bulging at the L4-5 and L5-S1 levels with a very small superimposed disc protrusion . . . . [T]here is no evidence of significant central canal stenosis or foraminal compromise." *Id*. Dr. Levin, a medical doctor certified in Emergency Medicine, is familiar with and has "been involved in the care of treatment of patients with spinal complaints of low back pain and reported limitations on mobility." Doc. No. 49 (Levin Decl.) at ¶ 1. He reviewed the 1999 MRI report, and concluded that the "MRI does not demonstrate the existence of any spinal condition that would serve as an objective, physiologic basis for complaints of severe, debilitating pain sufficient to prevent a patient from standing or walking." Doc. No. 49 (Levin Decl.), ¶ 3. The "MRI shows there was no anatomical basis for Mr. Harris' complaints of debilitating, low back pain sufficient to preclude him from standing and walking." *Id*. at ¶ 5.

In 2005, an administrative law judge reviewed Harris' application for supplemental benefits and found based on the 1999 MRI that Harris' low back pain was "nonsevere." Doc. No. 50 (Varanini Decl.), Ex. B at 13, 17.

In 2006, a lumbar series of x-rays were taken and were read as negative for abnormalities. Doc. No. 48, Ex. A at 49; *see also* Doc. No. 49 (Levin Decl.) ¶ 15.

In October 2005, Harris was incarcerated at Lake County Jail. He informed officials there that he suffered from chronic back pain, which he treated with medical marijuana. Doc. No. 70, Ex. D. He was issued a lower tier bunk. *Id*. at 153. In November 2005, he was allowed to use a wheelchair "until reevaluation in two weeks." *Id*. at 274. The wheelchair was discontinued in December 2005. *Id*. at 271. Harris repeatedly sought to have the wheelchair reissued. *Id*., Ex. E.

In January 2009, Harris was incarcerated at Lake County Jail and complained to Grigsby of pain that prevented him from walking. Doc. No. 49 (Levin Decl.) ¶ 6. Grigsby earlier had observed Harris walking smoothly without problems and after interviewing him, offered him pain medication and otherwise denied the request for medical marijuana and a wheelchair or walker. *Id*. Grigsby obtained Harris' medical records from his clinic. *Id*.

Harris was arrested on September 3, 2011, and incarcerated for four days at Lake County Jail. Doc. No. 30 at ¶¶ 18 & 20. On September 4, 2011, Harris submitted a sick call request, stating he suffered from degenerative disc disease and requesting access to medical marijuana, "or failing that, a wheelchair and a no-standing chrono." Doc. No. 48 (Stottsberry Decl.), Ex. A at 36. On September 6, 2011, Harris saw Grigsby for a medical evaluation. *Id*. at 67; *see also* Doc. No. 30 at ¶ 22. Harris crawled into the exam room and represented that he suffered from degenerative disc disease. Doc. No. 48, Ex. A at 67; Doc. No. 30 at ¶ 22. Grigsby asked him whether "he had sought medical help when he was on the outside" and noted that Harris responded that he had tried to obtain an MRI but did not obtain one. Doc. No. 48 (Stottsberry Decl.), Ex. A at 67. Harris has not had any further MRI tests since the 1999 MRI Report. *See* Doc. No. 50 (Varanini Decl.), Ex. D (admitting that Plaintiff has not received further MRI examination; admitting that he has no bone structure injuries). Grigsby denied the request for a wheelchair and a no-standing chrono. In his declaration, Levin opines that Grigsby's care for Harris' subjective complaints in 2011 "was within the applicable standard of care and was based on appropriate observations and assessments of the patient's condition as well as her knowledge of the previous testing and evaluations of the claimed low back disability." Doc. No. 49 at ¶ 16.

Harris left the September 6, 2011 appointment and crawled back to his cell. Doc. No. 30 at ¶ 23. He was threatened with discipline if he did not stand for the daily count. Doc. No. 30 at ¶¶ 31-34. At oral argument, Harris clarified that he never stood for the daily count. There is no evidence that he was disciplined for his failure to do so. There also is no evidence that Grigsby threatened Harris with discipline or was involved in the daily count.

Based on the above, it is undisputed that: (1) no medical professional has diagnosed Harris as having any physical condition that would cause him to experience severe back pain when standing or walking; (2) every medical professional who has reviewed Harris' diagnostic records has opined that the records reveal no anatomical abnormalities that could cause debilitating pain; (3) Grigsby was aware of these facts when she evaluated Harris on September 6, 2011; and, (4) although Harris has submitted admissible evidence of his pain, he has not submitted any evidence that his pain was due to a physical condition or caused by standing or walking.

5

**B.     Analysis**

Deliberate indifference to a prisoner's serious medical needs is prohibited by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference to serious medical needs constitutes cruel and unusual punishment). Inmates alleging that their medical care has been constitutionally inadequate in violation of the Eighth Amendment must prove two elements: (1) the existence a serious medical need, and (2) deliberate indifference to that need by prison officials. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (overruled on other grounds). A serious medical need exists if the failure to treat could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Only a prison official who knows both of "facts from which the inference could be drawn" that an excessive risk of harm exists and who *actually* draws that inference is deliberately indifferent to the inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A difference of opinion as to the medically acceptable course of treatment does not establish deliberate indifference by prison officials. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Where a prisoner contends the official should have offered a different treatment, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, . . . and the plaintiff must show that they chose this course of action in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

1.     Serious Medical Need

The 1999 MRI exam, the 2006 X-ray report, the personal observations of Grigsby in 2009 and 2011, and the expert declaration of Dr. Levin all establish the absence of any evidence that Harris suffers from a physical condition that would cause him to experience pain when standing or walking. This evidence is sufficient to shift the burden to Harris to go beyond the pleadings and designate specific evidence showing that there is a genuine issue for trial as to the seriousness of his medical need. *See Celotex*, 477 U.S. at 324. Harris has not met this burden.

Harris offered no evidence beyond his assertion in the verified complaint that he suffers from degenerative disc disease causing him such pain when walking or standing that he needs to

use a wheelchair or obtain a no-standing chrono. There is no evidence establishing that Harris is a medical doctor or otherwise qualified to diagnose a medical condition. Harris therefore has not submitted any competent evidence that he suffers from a physical condition that prevents him from walking or standing.

As the party opposing summary judgment, Harris "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsuhita*, 475 U.S. at 587. The record as a whole here could not lead a rational trier of fact to find that Harris had a physical condition that caused him to suffer pain when standing or walking. Harris has not met his burden of showing that there exists a triable issue of fact that would allow a reasonable fact-finder to conclude that he had a serious medical need in 2011.[1]

It is not the court's function on summary judgment to make credibility determinations or to weigh conflicting evidence. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Harris' allegations in the verified complaint that he suffers pain when walking or standing constitute admissible evidence on summary judgment. Doc. No. 30 at ¶¶ 5, 10, 13. However, in light of the overwhelming medical evidence presented by the Defendant, the court concludes that Harris' self-reporting is insufficient to create a triable issue of fact as to the existence – much less the seriousness – of a medical need.

---

[1] The court notes that another court granted summary judgment on the identical claim arising out of Harris' 2009 incarceration. *See Harris v. Lake County Jail, et al.*, Case No. 09-3168 (N.D. Cal. May 2, 2011) (concluding that Harris' "claim of immobilizing back pain is based entirely on self-reporting in his unverified complaint with no support in the record. Harris does not raise a triable issue of fact with his statements because he does not present any evidence that he has the requisite medical expertise to diagnose himself with disc disease or assess treatment modalities"). The Ninth Circuit affirmed: "The district court properly granted summary judgment because Harris failed to raise a genuine dispute of material fact as to whether he had a serious medical need, or whether defendants were deliberately indifferent to his health by not providing him with medical marijuana, a wheelchair, or a 'no standing' chrono. . . . At best, Harris alleged a difference of opinion as to the appropriate treatment for his alleged back pain, but he has not shown that defendants' decisions were 'medically unacceptable under the circumstances,' or made 'in conscious disregard of an excessive risk to [his] health.'" *Harris v. Howe*, No. 11-16246 (9th Cir. Jan. 2, 2013).

2.  Deliberate Indifference

Harris submitted a sick-call request and was seen by Grigsby. Grigsby asked him whether he had received any medical treatment since the last time she evaluated his condition in 2009, when she determined that he did not have any physical condition requiring a wheelchair or no-standing chrono. When Harris responded that he had not received treatment or a new MRI, she concluded that "nothing [was] necessary [at] this time." Doc. No. 50 at 67; *see also* Levin Decl. ¶¶ 12, 14, 16 (Grigsby's care of Harris in 2011 was "within the applicable standard of care and was based on appropriate observations and assessments of the patient's condition as well as her knowledge of the previous testing and evaluations of the claimed low back disability").

Although Harris offered evidence that he informed Grigsby that walking or standing caused him pain, he has not offered any evidence that Grigsby was aware of any "facts from which the inference could be drawn" that an excessive risk of harm existed for Harris. *See Farmer*, 511 U.S. at 837. Harris similarly has not offered any evidence establishing that Grigsby actually drew that inference. *See id*. Grigsby evaluated Harris in 2011 and, based on her prior knowledge of his medical records, after confirming there was no new medical evidence, concluded that she did not need to issue a wheelchair or a no-standing chrono. Harris has not offered any evidence to contradict Dr. Levin's opinion that Grigsby's response was within the appropriate standard of care. Grigsby's response therefore cannot constitute deliberate indifference to Harris' medical needs. *See Jackson*, 90 F.3d at 332 (deliberate indifference plaintiff must show that treatment "was medically unacceptable under the circumstances"). Finally, Harris' opinion that Grigsby should have offered him different medical treatment is insufficient as a matter of law to create a triable issue on summary judgment. *See Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference opinion between medical provider and inmate as to inmate's treatment cannot as a matter of law constitute deliberate indifference); *see also Sanchez*, 891 F.2d at 242.

The court therefore concludes that Harris has not met his burden of establishing that a triable issue of fact exists as to Grigsby's deliberate indifference.

**CONCLUSION**

Because Harris has failed to show that a triable issue of fact exists as to either the seriousness of his medical need or Grigsby's deliberate indifference to such need, the court concludes that defendant Grigsby is entitled to judgment as a matter of law and will therefore grant her motion for summary judgment.

Dated: January 17, 2013

Nandor J. Vadas
United States Magistrate Judge